**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

AUREL SMITH, *on behalf of himself and all similarly*
*situated prisoners at Coxsackie Correctional Facility,*

                           Plaintiff,

              - v -                                          Civ. No. 9:10-CV-1532
                                                                    (NAM/RFT)

DAVID F. MARTUSCELLO, JR., *Superintendent, Coxsackie*
*Correctional Facility*; BRIAN S. FISCHER, *Commissioner of*
*DOCS*; LUCIEN J. LECLAIRE, *Deputy Commissioner for*
*Facility Operations*; KAREN BELLAMY*, Director, Inmate*
*Grievance Committee,*

                           Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

AUREL SMITH
Plaintiff, *Pro Se*
02-A-6279
Auburn Correctional Facility
135 State Street
Box 618
Auburn, New York 13021

HON. ERIC T. SCHNEIDERMAN                     ROGER W. KINSEY, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

                    **REPORT-RECOMMENDATION and ORDER**

        Aurel Smith, a New York State prison inmate proceeding *pro se* and *in forma pauperis,*

commenced this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his civil

rights by allowing and enabling widespread prisoner abuse by their subordinates and by failing to

correct the constitutional violations that they were aware of through various avenues, including, but not limited to, prisoner grievances and complaints. *See* Dkt. No. 2, Am. Compl. Defendants now move for dismissal of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 25. Plaintiff opposes the Motion. Dkt. No. 27. For the reasons that follow, we recommend that Defendants' Motion be **granted** and Plaintiff's Amended Complaint be **dismissed** in its entirety.

## I. BACKGROUND

### A. Procedural History

On December 20, 2010, Plaintiff filed a §1983 Complaint and, simultaneously, an Amended Complaint along with a Motion to Proceed *In Forma Pauperis* ("IFP"). By Amended Memorandum-Decision and Order, dated November 29, 2011, the Honorable Norman A. Mordue, then-Chief United States District Judge, reviewed those filings and granted Plaintiff permission to proceed with this matter IFP. Dkt. No. 14. However, Judge Mordue denied Plaintiff's application for appointment of counsel and his request for class certification. Otherwise, Judge Mordue, pursuant to 28 U.S.C. § 1915A, accepted Plaintiff's Amended Complaint for filing.[1] *See generally id.*

### B. Facts

The following facts are derived from the Amended Complaint, which must be deemed true in accordance with the standard of review on a motion to dismiss. *See infra* Part II.B. Plaintiff was initially in the custody of the New York State Department of Corrections and Community

---

[1] Plaintiff appealed Judge Mordue's Order to the Second Circuit Court of Appeals on or about December 12, 2011. *See* Dkt. No. 17, Notice of Appeal. On April 30, 2012, the Second Circuit dismissed Plaintiff's appeal. *See* Dkt. No. 28, Mandate.

Supervision ("DOCCS")[2], from 1996 until 2000, and thereafter Plaintiff re-entered the custody of DOCCS in November 2002 and has been housed at various DOCCS correctional facilities ever since. Dkt. No. 2 at ¶¶ 10-12 & 18-19. Plaintiff currently resides at Auburn Correctional Facility. Dkt. No. 7, Notice of Change of Address.

In the handwritten Amended Complaint, which is fifty-four pages long, Plaintiff asserts that the Supervisory Defendants have allowed and enabled the staff at various New York State correctional facilities to abuse their power and create an atmosphere of fear and intimidation, which results in pervasive and systematic violations of prisoners' civil rights. *See generally* Am. Compl. Much of the Amended Complaint focuses on the alleged constitutional violations suffered by other inmates, and not Plaintiff.

Plaintiff indicates that the events giving rise to the causes of action occurred at Coxsackie Correctional Facility ("Coxsackie").[3] Am. Compl. at ¶ 2. Plaintiff was transferred to Coxsackie in January 2009 and remained there until he was transferred in July 2010. *Id*. at ¶ 78. Plaintiff was issued a misbehavior report upon his arrival at Coxsackie for refusing to go to mandatory breakfast. *Id.* at ¶ 81. However, Plaintiff did not refuse to go to breakfast, and thus claims this misbehavior report was false and was solely issued to "initiate" him and to demonstrate to Plaintiff that the correction officers were in charge. *Id.* at ¶ 82. Plaintiff was placed in pre-hearing cell confinement; a practice known as "burning" prisoners. *Id*. at ¶ 83. He was harassed by staff at Coxsackie on

---

[2] Throughout the Amended Complaint, Plaintiff refers to the New York State Department of Correctional Services, or "DOCS." In April 2011, the New York State Department of Correctional Services merged with the New York State Division of Parole to form the New York State Department of Corrections and Community Supervision ("DOCCS"). In order to maintain consistency, we will construe Plaintiff's references to DOCS as references to DOCCS.

[3] Even though the crux of this Amended Complaint concerns events that occurred at Coxsackie, Plaintiff nonetheless provides a history of his imprisonment throughout the DOCCS system. Am. Compl. at ¶¶ 69-70, 71, 73-74 & 76. As more fully explained in Part II.A, none of those experiences are relevant to our discussion.

various unspecified occasions, for which he filed grievances. These grievances were not properly investigated and were ultimately denied. *Id*. at ¶¶ 85, 89 & 93. In one instance, Plaintiff requested that video surveillance of the incident be included in the grievance determination but that request was denied. *Id*. at ¶¶ 86-87 & 94. Plaintiff appealed an unspecified number of denied grievances, all of which were affirmed by the Central Office Review Committee. *Id*. at ¶ 94.

In July 2009, Plaintiff also received a false misbehavior report from Correctional Officer ("CO") Stevens, who is not a defendant in this action. *Id.* at ¶ 98. Plaintiff claims that this was issued as retaliation for him filing grievances against CO Stevens between May and July 2009. *Id.* at ¶¶ 96-98. The day after Plaintiff received the misbehavior report, he received another false misbehavior report relating to CO Stevens, but authored by CO Smith, who is also not a defendant in this action. *Id.* at ¶¶ 99-100. Plaintiff was found guilty of the misbehavior and Plaintiff's grievances for retaliation were dismissed. *Id.* at ¶¶103-05. Plaintiff asserts that several of his grievances against these correction officers were not properly investigated. *Id.* at ¶¶101-06. Instead of bringing suit against these CO's, Plaintiff states that:

> the foregoing account has been given to give background descriptions how inmates are and maybe so easily issued fabricated misbehavior reports with findings of guilt ensured against them, hence officers' wrongful manipulation of the inmate disciplinary program, as well as the ineffective and inadequate nature of the inmate grievance program when it comes to complaints against officer misconduct.

*Id*. at ¶ 107.

At Coxsackie Correctional Facility, on April 20, 2010, Plaintiff was attacked by several correction officers, none of which are named as defendants in this action. *Id.* at ¶¶ 177-191. After this incident, Plaintiff was issued a false misbehavior report, placed in a special housing unit, and ultimately transferred from Coxsackie in July 2010. *Id.* at ¶ 191. Plaintiff filed a grievance regarding this, which was denied by Defendant Superintendent Martuscello. *Id*. at ¶ 204. Defendant

Martuscello also ignored Plaintiff's request for criminal charges to be lodged against the offending correction officers and failed to initiate an investigation or ask the Inspector General to conduct one despite observing Plaintiff's physical injuries the day after the April 20, 2010 incident. *Id.* at ¶¶ 211-214; Dkt. No. 27, Pl.'s Opp'n at ¶ 38. Plaintiff alleges that Defendants Martuscello, Fischer, LeClaire, and Bellamy were deliberately indifferent "in allowing matters of guard brutality to not only occur but to become so pervasive and widespread that such is now systematic." Am. Compl. at ¶ 222.

Plaintiff seeks declaratory and injunctive relief in this action.[4]

## II. DISCUSSION

### A. Timeliness

Before resolving Defendants' Motion to Dismiss, this Court must address the timeliness of Plaintiff's Amended Complaint. Many of the incidents Plaintiff outlines in the Amended Complaint occurred prior to the three year statute of limitations for § 1983 actions, and as such, are time-barred.[5] *See*, e.g., *Pauk v. Bd. of Trustees of City Univ. of New York*, 654 F.2d 856, 859 (2d. Cir.

---

[4] The instant case is not the only pending case Plaintiff has filed in this District. In *Smith v. Wildermuth, et al.*, Civ. No. 9:11-cv-00241, Defendant Martuscello is also a Defendant and appears to have been sued in both his individual and official capacity. This case also involves allegations regarding Plaintiff's incarceration at Coxsackie Correctional Facility (and Upstate Correctional Facility) and Plaintiff seeks monetary damages and injunctive relief from Defendant Martuscello. It should be noted that Plaintiff specifically references this present case and states that in this present case, he seeks suit against Defendants in their official capacities only and seeks injunctive and declaratory relief toward prison reform. *See Smith v. Wildermuth, et al.*, Civ. No. 9:11-cv-00241, Dkt. No. 5, Am. Compl.

[5] Plaintiff's original Complaint is dated November 16, 2010, and his Amended Complaint is dated December 16, 2010. Both Complaints were received and docketed on December 20, 2010. An inmate's complaint is deemed filed when it is delivered to prison officials. *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993); *Pritchard v. Kelly*, 2000 WL 33743378, at *2 n.2 (N.D.N.Y. Oct. 3, 2000). The date that a prisoner signed his complaint is presumed to be the date he gave the complaint to prison officials to be mailed. *Mingues v. Nelson*, 2004 WL 324898, at *3 (S.D.N.Y. Feb. 20, 2004) (citing, *inter alia, Houston v. Lack*, 487 U.S. 266, 270 (1988)). In this case, Plaintiff provided two pleadings in the same envelope. Giving Plaintiff all due liberality, the date of his original Complaint, November 16, 2010, will be utilized as the date this action is deemed to have been filed and will also be utilized for purposes of determining the applicable limitations period. *Dory v. Ryan*, 999 F.2d at 682.

1981) (federal claim accrues when the plaintiff "knows or has reason to know" of the injury that is the basis for his action); *Bailey v. Tricolla,* 1995 WL 548714, at *3 (E.D.N.Y. Sept. 12, 1995) (noting that in the absence of a congressional dictate as to a limitations period, we apply the most appropriate state statute of limitations, which, for 1983 actions, is the general personal injury statute setting forth a limitations period of three years); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (noting that the applicable limitations period for §1983 actions in New York is three years); N.Y.C.P.L.R. § 214 (5).  As such, the incidents discussed in the Amended Complaint prior to November 16, 2007 have not been summarized herein by this Court, and, to the extent Plaintiff attempts to bring claims in this action based upon these incidents, these claims should be **dismissed** as time-barred.

Given the aforementioned recommendation, this Court's analysis with respect to Defendants' Motion to Dismiss shall be limited to those portions of the Amended Complaint that concern alleged constitutional violations occurring on or after November 16, 2007.

### B. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters

alleged in the complaint, documents attached to the complaint, and matters to which the court may

take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing

*Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  Moreover, "even if not attached

or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is

*integral to the complaint*' may be considered by the court in ruling on such a motion."  *Roth v.*

*Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original) (quoting *Cortec Indus., Inc. v.*

*Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

      The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn

from the "well-pleaded" allegations of the complaint.  *See Retail Clerks Intern. Ass'n, Local 1625,*

*AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157,

168 (2d Cir. 2008).  Nevertheless, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Id*. (citation omitted).

      A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's

complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*).[6]

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

---

[6] By its opinion in *Bell Atl. Corp. v. Twombly* and then again in *Ashcroft v. Iqbal*, the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 561 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)).  In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id*. at 563.

556 U.S. at 678.  This plausibility standard "is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  Thus, in spite of the

deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to

assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants

have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of*

*California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process

of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to

plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

      With this standard in tow, we consider the plausibility of Plaintiff's Amended Complaint.

### C. Personal Involvement

      The personal involvement of a defendant is an essential element of a § 1983 claim.  *Wright*

*v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  "A plaintiff must thus allege a tangible connection

between the acts of a defendant and the injuries suffered."  *Bass v. Jackson*, 790 F.2d 260, 263 (2d

Cir. 1986).  Moreover, there is no respondent superior liability under § 1983, therefore a supervisor

cannot be sued merely because he or she is a supervisor.  *Richardson v. Goord*, 347 F.3d 431, 435

(2d Cir. 2003).  The "mere 'linkage in the prison chain of command' is insufficient to implicate

[prison administrators] in a § 1983 claim."  *Id*. (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d

Cir. 1985)).  However, a supervisor or person in command may be held liable if he was personally

involved in the alleged deprivation.

> The personal involvement of a supervisory defendant may be shown by evidence that: (1)
> the defendant participated directly in the alleged constitutional violation, (2) the defendant,
> after being informed of the violation through a report or appeal, failed to remedy the wrong,
> (3) the defendant created a policy or custom under which unconstitutional practices

occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Here, Defendants David F. Martuscello, Jr., Brian S. Fischer, Lucien J. LeClaire and Karen Bellamy move for dismissal based on lack of personal involvement. *See* Dkt. No. 25. Plaintiff alleges that on April 20, 2010, he suffered serious physical injury when he was attacked by several correction officers and beaten in an unwarranted attack, which occurred both before and after he was handcuffed. Am. Compl. at ¶¶ 177-199; Pl.'s Opp'n at ¶ 12. Plaintiff was transported *via* ambulance to Albany Medical Center Hospital where he was diagnosed with a concussion as a result of this beating. Pl.'s Opp'n at ¶ 17. However, Plaintiff does not name these correction officers as Defendants in the instant action, and thus Plaintiff does not pursue any claim against these individuals. With respect to the Defendants Plaintiff does name, he has not alleged that any of the Defendants directly participated in the alleged assault against him on April 20, 2010. However, we find that Plaintiff has made sufficient allegations regarding Defendant Martuscello's personal involvement to proceed at this stage. Specifically, Plaintiff states that he requested that Defendant Martuscello file a criminal complaint, and Defendant Martuscello ignored this request. Am. Compl. at ¶¶ 211-212. Defendant Martuscello denied Plaintiff's grievance about the incident. *Id.* at ¶ 204. Additionally, Plaintiff alleges that Defendant Martuscello saw Plaintiff on April 21, 2010, the day after the attack, and failed to initiate an investigation into the attack. *Id.* at ¶ 213; Pl.'s Opp'n at ¶ 38. In light of this, it appears that Plaintiff has alleged sufficient personal involvement on the part of Defendant Martuscello to allow claims against him.

However, Plaintiff fails to plead adequate factual allegations to implicate the remaining three

Defendants in any wrongdoing with respect to § 1983.  Namely, Plaintiff brings no specific allegations of Defendant Fischer's or Defendant LeClaire's personal involvement.  Plaintiff states that the inmate grievance program "under defendants' current operation, and the direction of Defendant Bellamy, does not offer inmates procedural protection."  Am. Compl. at p. 36 ("Fourth Cause of Action").  He also states that Defendant Bellamy, the Director of the Inmate Grievance Program, denied the grievance Plaintiff filed against Defendants. *Id*. at ¶¶ 217-218, 226 & 269-270.  In his Opposition, Plaintiff indicates that Defendant Bellamy is being sued for "the systematic denials of <u>all</u> prisoner grievances asserting guard brutality and misconduct, refusing to take notice of patterns thereto, and being deliberately indifferent to such matters."  Pl.'s Opp'n at ¶ 64 (emphasis in original).  With respect to all Defendants, Plaintiff states he suffered harm as "a result of these supervisory officials having abdicated their duty to supervise and monitor the (mis)use of force and being deliberately indifferent to the matter of officer misconduct and abuse of prisoners and, thus, permitting a pattern of excessive (or misuse) of force to develop, persist and become pervasive by their not taking the necessary measures to punish officers nor deter offending officers from engaging in such abuses."  *Id*. at ¶ 13.  Plaintiff also claims that the complaints filed by prisoners should have put Defendants on notice of continued guard brutality. Pl.'s Opp'n at ¶ 47.  However, none of these conclusory statements, without specific supporting facts, create any constitutional violations by Defendants Fischer, LeClaire and Bellamy.    As such, claims against Defendants Fischer, LeClaire and Bellamy should be **dismissed**.

### D. Due Process Claims

Plaintiff alleges that the "inmate disciplinary program/system is inadequate and ineffective in ensuring prisoners' procedural due process protections."  Am. Compl. at p. 34 ("Third Cause of

Action"). He also claims that the Coxsackie inmates are denied procedural due process guarantees during the prison disciplinary hearings. *Id*. at ¶ 247. Assuming *arguendo* that Plaintiff has alleged sufficient personal involvement by Defendants, Plaintiff's attempts to assert claims of due process violations on behalf of other inmates must be dismissed outright for failure to state a claim. Judge Mordue denied Plaintiff's request to prosecute this action on behalf of similarly situated fellow inmates as a class action given that as a *pro se* litigant, Plaintiff cannot bring claims on behalf of other prisoners. *See* Am. Mem.-Decision and Order at pp. 5-6.

### E. Eleventh Amendment

Defendants also seek to have the complaint dismissed on the basis of the Eleventh Amendment's bar to suit as Plaintiff's action sues Defendants in their official capacities only. Plaintiff explicitly states in his Opposition that he is not seeking monetary damages from the Defendants and therefore the Eleventh Amendment bar to suit is not applicable here. Pl.'s Opp'n at ¶¶ 5-6. Plaintiff seeks injunctive and declaratory relief only. Am. Compl. at p. 46 ("Prayer for Relief" at ¶¶ 3 & 4). Plaintiff requests that "all plaintiffs be allowed to seek individual suits for damages separate from this . . . action." Am. Compl. at p. 52 ("Prayer for Relief" at ¶ 6). Further, Plaintiff specifically states that he is "seeking prospective relief as opposed to damages." Pl.'s Opp'n at ¶ 6. As this Court has already recommended that the claims against all Defendants except for Defendant Martuscello be dismissed, the Eleventh Amendment analysis herein will be limited to Defendant Martuscello.

The Eleventh Amendment states "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST.

amend. XI.  Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens.  *Hans v. Louisiana*, 134 U.S. 1 (1890).  "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'"  *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)).  Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. at 98-101; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984).  To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state."  *Rourke v. New York State Dep't. of Corr. Servs.* 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

However, whether state officials sued in their official capacities are entitled to Eleventh Amendment immunity depends also upon the relief sought in the complaint.  The Second Circuit has held that in accordance with *Ex parte Young*, 209 U.S. 123 (1908), "acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be the subject of injunctive or declaratory relief in federal court."  *Berman Enters., Inc. v. Jorling,* 3 F.3d at 606

(citations omitted); *see also Rourke v. New York State Dep't of Corr. Servs.*, 915 F. Supp. at 540.

In appropriate circumstances, the jurisdictional bar of the Eleventh Amendment may immunize a state official acting in his or her official capacity. *See In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citation omitted). However, a suit may proceed against a state official in his or her official capacity – notwithstanding the Eleventh Amendment – when a plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d at 618 (quotations and citations omitted). In addition to these requirements, an official capacity suit may proceed only where a government entity's "policy or custom" was the "moving force" behind the alleged violation of federal law. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)).

Here, Plaintiff requests prospective declaratory and injunctive relief only. With respect to the violations Plaintiff alleges, such claims must be denied as moot. *Young v. Coughlin*, 866 F.2d 567, 568 n. 1 (2d Cir. 1989) (noting that the prisoner's transfer to another facility renders his claims for declaratory and injunctive relief moot); *Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006) (holding as moot all injunctive and declaratory claims against defendants not involved in the prison facilities where the actions complained of occurred given that plaintiff is presently incarcerated at a different facility). While Plaintiff claims that the events giving rise to the causes of action occurred at Coxsackie Correctional Facility, Plaintiff is no longer an inmate at Coxsackie but is currently incarcerated at Auburn Correctional Facility. As such, Defendant's claim against Defendant Martuscello, which is in his official capacity only, should be **dismissed** pursuant to the Eleventh Amendment.

Next, given Judge Mordue's determination that Plaintiff is not entitled to proceed with this case as a class action, the requests for declaratory and injunctive relief as they pertain to other prisoners are moot. *See supra* Part II.D.  Plaintiff has no standing to assert these claims on behalf of other prisoners; as such, Plaintiff can make no claim of a case or controversy.  It is well settled that federal courts are restricted to deciding "Cases and Controversies" pursuant to Article III, § 2 of the United States Constitution. *Bauer v. Veneman,* 352 F.3d 625, 631-32 (2d Cir. 2003).  "A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when "'the parties lack a legally cognizable interest in the outcome.'" *Fox v. Bd. of Trustees of State Univ. of New York,* 42 F.3d 135, 140 (2d Cir. 1994) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack,* 395 U.S. 486, 496 (1969))).

Moreover, even if Plaintiff's request for declaratory relief was not disposed of as moot, Plaintiff's claim with respect to Defendant Martuscello should still be dismissed.  The Prison Reform Legislative Act ("PLRA") guides with respect to any request for prospective relief in civil actions about prison conditions.  It states:

> "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means to correct the violation of the Federal right.

18 U.S.C.A. §3626(a)(1).

As to Plaintiff's claim for declaratory relief, the Amended Complaint states that "Plaintiff seeks declaratory relief" but fails to specify what declaratory relief he seeks. Am. Compl. at p. 46 ("Prayer for Relief" at ¶ 3).  Such a request is both vague and broad and therefore cannot be granted under the PLRA.

*-14-*

**F.  Qualified Immunity**

Defendants also assert qualified immunity with respects to Plaintiff's claims.  In light of the above analysis wherein this Court has determined that Plaintiff failed to establish the Defendants violated his constitutional rights, it is unnecessary for us to consider this affirmative defense proffered by Defendants.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

**III.  CONCLUSION**

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 25) be **granted** and Plaintiff's Amended Complaint (Dkt. No. 2) be **dismissed**.

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

Date:   May 24, 2012
        Albany, New York

Randolph F. Treece
U.S. Magistrate Judge